Thomas F. **CHAPMAN** and Lee E.
Jensen, Appellants,

v.

**UNITED STATES** of America,
Appellee.

Nos. 546–70, 547–70.

United States Court of Appeals,
Tenth Circuit.

June 22, 1971.

Peter H. Ney, Englewood, Colo., for appellants.

James L. Treece, U. S. Atty., Richard J. Spelts, Asst. U. S. Atty., Denver, Colo., for appellee.

Before LEWIS, Chief Judge, and ALDISERT * and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

Thomas F. Chapman and Lee E. Jensen were convicted by a jury and sentenced on charges of having received and concealed marijuana, with intent to defraud the United States, knowing it had been imported into the United States in violation of 21 U.S.C. § 176a. On appeal they contend that (1) there was insufficient evidence to support the convictions; (2) there was an unlawful search of Chapman's car; (3) it was entrapment to allow the package to be sent from New York to Denver since the contents were contraband; and (4) the defense should have been allowed to comment on the sentence during closing arguments to the jury since conviction carries a mandatory five-year sentence with no parole or probation.

On February 25, 1970, a package containing a small dress, a pouch handbag and two stuffed elephants was inspected by customs officials in New York City. The package bore a return address of Bombay, India. It had many marks indicating foreign origin. The elephants were found to contain balls of a hard substance rolled up in cellophane. A sample was tested and found to be hashish. The customs authorities resealed the package and turned it over to the postal authorities. The package was then sent to the Denver, Colorado Postal

* Of the Third Circuit, sitting by designation.

Inspector. The package was re-opened in Denver and the contents of the large elephant were again subjected to test. This test also identified the balls as hashish. A special post office employee sewed up the large elephant and replaced its saddle blanket very carefully so that one would not know that it had been opened. The gifts were placed back in the package. It was carefully sealed. The package was then in the same condition as when it was received in Denver. The Postal Inspector, along with a customs official, caused the package to be delivered to the Denver address. The package was addressed to a Miss P. A. Haines, c/o Thomas F. Chapman at Jensen's home. Jensen's mother, Mrs. Stauter, signed for the package and accepted it at the Denver residence at about 3:00 p. m. A search warrant was then issued. About 15 minutes after the package was delivered, Chapman entered the residence. Jensen entered shortly thereafter. Less than 30 minutes later, the appellants left the residence with the package and entered Chapman's car. They were departing when they were stopped and arrested. As agents approached the car, Jensen tossed the box into the back seat. After the arrest, the agents looked through the car windows and saw that the larger elephant had been opened and that the hashish balls were exposed.

The contents of the package could not have been considered other than gifts. The toy elephants, with attendant saddle blankets, were display items. Nothing in this case indicates any logical reason why a recipient of such gift items would proceed to open them in order to determine content. The fact that the large elephant had been ripped open along the rear seam shortly after its arrival strongly suggests that appellants knew that hashish was secreted inside the large elephant.

Appellants' first contention that the evidence was insufficient to support conviction is without merit. A conviction must be upheld if there is substantial evidence to support it. On appeal the evidence must be viewed in the light most favorable to the prosecution. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. Mecham, 422 F.2d 838 (10th Cir. 1970); Johnson v. United States, 270 F.2d 721 (9th Cir. 1959). Appellant Chapman testified that it was coincidental that he arrived at the residence in mid-afternoon shortly after the package had been delivered. He testified that he did not know the addressee, Miss P. A. Haines, and had not expected such a package. Nevertheless, the package was opened by Mrs. Stauter in Chapman's presence. The two black elephants were clean, and sewed neatly and tightly. Mrs. Stauter reached up under the tails of the two elephants and felt some rough sewing under the saddle which she did not believe to be compatible with the rest of the stitching. At trial Mrs. Stauter denied having seen the small plastic balls containing the hashish in either of the elephants, yet she proceeded to break the stitching where the saddle blanket went across the large elephant. She explained that she did so "to see if there was any opening under there because I was wondering what was going on and inasmuch as it was open I wanted to know what was happening, and there wasn't any opening, but I did feel the rough stitching." At this point, Mrs. Stauter and Chapman contend that the elephants were placed back in the box and that shortly thereafter appellants left the residence to take the package to the post office. Chapman, Jensen and Mrs. Stauter all denied having seen the small plastic balls of hashish in the larger elephant. Chapman and Jensen testified that Chapman carried the package from the house to the car. Three officers testified that Jensen carried the package to the car and, as they approached, they saw Jensen throw the package onto the back seat. The officers observed the package through the windows. They saw that the large elephant was exposed in the box and that the coverlet had been torn off so that the hashish balls inside were visible.

Appellants contend that there was an unlawful search of Chapman's car. The officers knew the contents of the package which was being carried to the car by Jensen. They had reasonable cause to believe that a crime was being committed or had been committed. Therefore they had probable cause to stop the car. It has long been settled that objects falling in plain view of an officer who has a right to be in a position to have that view are subject to seizure and may be introduced into evidence. Harris v. United States, 390 U. S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968). [T]hings which are visible and accessible and in the offender's immediate custody can be seized by the police. United States v. Baca, 417 F.2d 103 (10th Cir. 1969). Several officers in this case testified that they observed the open package in the back seat of Chapman's car. The large elephant had been opened and one of the balls of hashish had been exposed. The seizure of the hashish under these circumstances is authorized.

Appellants next contend that the customs agents should have seized the contraband in New York when it was first discovered and that failure to do so constituted illegal entrapment. It is permissible to allow contraband to reach its destination. In United States v. Davis, 272 F.2d 149, 153 (7th Cir. 1959) the court said:

"To require immediate seizure of the contraband upon discovery would deprive federal officers of a most effective method of obtaining evidence against ultimate consignees, clearly a result contrary to Congressional intent." Also see United States v. Beckley, 335 F.2d 86 (6th Cir. 1964), cert. denied 380 U.S. 922, 85 S.Ct. 921, 13 L.Ed.2d 807 (1965), and United States v. Sohnen, 298 F.Supp. 51 (E.D.N.Y. 1969).

If contraband were simply seized by customs agents and disposed of, then the intended receivers of the illicit goods would go unpunished. The government, in cases such as this, does not initiate the crime. It simply monitors the crime until it can identify the participants. We see no merit in appellants' contention that the commission of the offense would have been impossible without the actions of the agents. The offense would still have been committed. Without the actions of government officials the crime would have gone undetected.

This court has discussed the concept of entrapment on several occasions. Rowlette v. United States, 392 F.2d 437 (10th Cir. 1968); Martinez v. United States, 373 F.2d 810 (10th Cir. 1967); Jordan v. United States, 348 F.2d 433 (10th Cir. 1965). The general rule laid down in these cases was reiterated in Martinez v. United States, *supra* at 812, when this court said:

"Entrapment occurs when the criminal design or conduct originates in or is the product of the minds of the government officials and is implanted by them in the mind of an otherwise innocent person." Also see Harris v. United States, 402 F.2d 464 (10th Cir. 1968).

It is evident that we are not faced with that situation here.

Appellants' last contention is without merit. They argue that the jury should have been informed of the minimum sentence which is mandatory following conviction under this statute. There are some instances in which the jury has a role with regard to punishment. Certain statutes leave it to the jury to decide whether the death penalty should be imposed. Other statutes made the punishment for a crime dependent on the amount of money involved. The statute involved in the case at bar leaves nothing for jury determination beyond the guilt or innocence of an accused. That, then, was the exclusive function of the jury. United States v. Davidson, 367 F.2d 60 (6th Cir. 1966); Lyles v. United States, 103 U.S.App.D.C. 22, 254 F.2d 725 (1957), cert. denied 356 U.S. 961, 78 S.Ct. 997, 2 L.Ed.2d 1067 (1958).

We affirm.