# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: __**June 06, 2016**_____

**NO. 33,666**

**STATE OF NEW MEXICO,**

  Plaintiff-Appellee,

v.

**WESLEY DAVIS,**

  Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY**
**Lisa B. Riley, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Jane A. Bernstein, Assistant Attorney General
Albuquerque, NM

for Appellee

LAW WORKS LLC
John A. McCall
Albuquerque, NM

for Appellant

**OPINION**

**VIGIL, Chief Judge.**

{1}    The issue in this case is whether the warrantless search of Defendant's backpack was permissible under the inventory search exception to the warrant requirement. We conclude it was not and reverse the order of the district court, which denied Defendant's motion to suppress.

**I.    BACKGROUND**

{2}    Defendant moved the district court to suppress evidence seized in a warrantless search of his backpack, arguing that the search was per se unreasonable under the Fourth Amendment of the United States Constitution and Article II, Section 10 of the New Mexico Constitution. The district court ruled that the search was valid as an inventory search and denied the motion to suppress. Defendant entered into a conditional plea agreement, reserving his right to appeal the order denying the motion to suppress. Defendant appeals.

{3}    The following evidence was presented at the hearing on the motion through Deputy Daniel Vasquez. Deputy Vasquez was driving on patrol when he saw a motorcycle at a stop sign being driven by Defendant, whom he recognized. Deputy Vasquez said he knew, without giving any specific explanation, that Defendant did not have a valid driver's license. Deputy Vasquez began to follow Defendant and as

Defendant pulled into his driveway, the deputy turned on his lights. Defendant parked his motorcycle, took off his backpack, and placed it on top of his car that was parked in his carport. Deputy Vasquez had parked his vehicle behind the motorcycle in Defendant's driveway and Defendant went to speak with Deputy Vasquez. They met in the driveway between the motorcycle and the carport and Deputy Vasquez asked Defendant for his license and registration. After contacting dispatch and being informed that Defendant's license was in fact revoked with an arrest clause, he arrested Defendant for driving with a suspended or revoked driver's license.

{4}     Deputy Vasquez patted Defendant down and asked Defendant "if there was anything in the backpack that [he] needed to be aware about." Defendant answered that there was marijuana in the backpack. Deputy Vasquez then walked to Defendant's car, seized the backpack and searched it, finding three plastic bags with marijuana inside.

{5}     Deputy Vasquez asserted that he inquired about the backpack because the backpack had been on Defendant's person and to inquire about valuables. Deputy Vasquez also testified that the Sheriff's Department has a guideline that any belongings in a person's possession at the time of an arrest must be inventoried, regardless of whether it has value or not. He explained that under the policy, "anything on your person is going to go with you when you are arrested." However,

Deputy Vasquez also acknowledged that the backpack was not on Defendant's person at the time of his arrest.

**II.  MOTION TO SUPPRESS**

**A.  Standard of Review**

{6}    The only issue on appeal is whether the warrantless search of Defendant's backpack qualifies as an inventory search exception to the warrant requirement. The State does not argue any other exception, and the district court relied solely on the inventory search exception in denying the motion to suppress. We therefore only review whether the State has satisfied the requirements of this exception.

{7}    In examining the denial of a motion to suppress, "we observe the distinction between factual determinations, which are subject to a substantial evidence standard of review and application of law to the facts, which is subject to de novo review." *State v. Lopez*, 2009-NMCA-127, ¶ 7, 147 N.M. 364, 223 P.3d 361 (alterations, internal quotation marks, and citation omitted). "We view the facts in the manner most favorable to the prevailing party and defer to the district court's findings of fact if substantial evidence exists to support those findings." *Id.* (internal quotation marks and citation omitted).

## B.    Inventory Search Exception

{8}    Warrantless searches by law enforcement are permissible pursuant to the Fourth Amendment of the United States Constitution if they qualify under one of the exceptions to the warrant requirement. *State v. Ruffino*, 1980-NMSC-072, ¶ 3, 94 N.M. 500, 612 P.2d 1311. An inventory search is such an exception. *State v. Nysus*, 2001-NMCA-102, ¶ 26, 131 N.M. 338, 35 P.3d 993. An inventory search is justified because:

> An inventory protects a defendant's property in police custody from theft; conversely, it protects the police from accusations or false claims of theft of the property that was in an arrestee's possession. Moreover, the inventory prevents the introduction into the custodial setting of dangerous instrumentalities that may be concealed in innocent-looking articles. In other words, orderly police administration justifies examination and inventorying of items removed from an arrestee's possession or person.

*State v. Boswell*, 1991-NMSC-004, ¶ 10, 111 N.M. 240, 804 P.2d 1059. "[I]nventory searches are presumed to be unreasonable and the burden of establishing their validity is on the [s]tate." *State v. Shaw*, 1993-NMCA-016, ¶ 5, 115 N.M. 174, 848 P.2d 1101.

{9}    Three requirements must exist for a constitutional, lawful inventory search: "(1) the police must have control or custody of the object of the search[;] (2) the inventory must be carried out pursuant to established police regulations[;] and (3) the search must be reasonable." *In re Jeff M.*, 1999-NMCA-045, ¶ 14, 127 N.M. 87, 977 P.2d 352. The inventory search must also be conducted in good faith. *Id.*

4

{10} Under the first prong, law enforcement obtains custody or control of an object when there is "a reasonable nexus between [the] arrest and the seizure of the [property]." *Boswell*, 1991-NMSC-004, ¶ 8. A reasonable nexus is "the need to safeguard defendant's property from loss and to protect the police from liability and charges of negligence[,]" *id.* ¶ 14, which is grounded on a defendant's possession of property when an arrest occurs. *See id.* ¶ 10; *see also Illinois v. Lafayette*, 462 U.S. 640, 646 (1983) (stating that it is appropriate to inventory property at a station house when the items are "found on the person or in the possession of an arrested person who is to be jailed"). Our use of the term "possession" herein is limited to having physical custody or control of an object, and not to other legal meanings and connotations that may otherwise be associated with "possession." *See United States v. Nenadich*, 689 F.Supp. 285, 288 n.1 (S.D.N.Y. 1988) ("Actual possession is what most of us think of as possession—that is, having physical custody or control of an object.").

{11} Here, Defendant did not have the backpack on his person or in his physical possession at the time of his arrest. After parking his motorcycle in his driveway, Defendant walked to his carport and placed his backpack on top of his car. This occurred before Deputy Vasquez arrived in the driveway to conduct his investigation. Defendant walked back to meet Deputy Vasquez when the officer arrived, and that

interaction led to the subsequent investigation of a traffic violation, arrest, pat down, and search. None of these facts show that Defendant's backpack was on his person or in his physical possession during the time Deputy Vasquez conducted his investigation or arrest. Without the backpack being on Defendant's person or in his possession, the necessity to safeguard Defendant's property and protect law enforcement from liability was absent.

{12}     It is important to recognize that under the undisputed facts in this case, Deputy Vasquez seized the backpack at Defendant's home and this is a significant factor in our ultimate determination. *See United States v. Perea*, 986 F.2d 633, 643 (2d Cir. 1993) ("When a person is arrested in a place other than his home, the arresting officers may impound the personal effects that are with him at the time to ensure the safety of those effects or to remove nuisances from the area." (internal quotation marks and citation omitted)). A defendant has a right to place his personal items on his private property and reasonably expect that law enforcement will not seize it without a warrant. *See* U.S. Const. amend. IV; N.M. Const. art. X; *see also State v. Crane*, 2014-NMSC-026, ¶ 30, 329 P.3d 689 (recognizing that "there is a heightened expectation of privacy in one's home" and that "what a person seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected" (alteration, internal quotation marks, and citations omitted)). We decline to conclude

that the government interests in the inventory search exception permit law enforcement to walk on Defendant's property, enter his carport, and seize his backpack. *See* 3 C.J.S. Search & Seizure § 5.5(b) (2015) (regarding inventory searches, "[i]f . . . the defendant is arrested in his own permanent residence, then the police would have no basis for carrying off such objects as suitcases merely because they were observed there at the time of the arrest"). A reasonable nexus between the arrest and the seizure was absent because Defendant did not have possession of the backpack at the time of his arrest and because it was seized at Defendant's home. *Cf. United States v. Matthews*, 532 Fed. App'x 211, 224 (3d Cir. 2013) ("In our view, when a valid arrest has been made in a public place, which requires that the arrested person be transported from the scene, police may search any luggage that the person has in his possession at the time of the arrest, and which must accompany him to the police station, prior to transporting it.").

{13}     The State relies on purported similarities in *Boswell* to justify the search as an inventory search; however, the facts are clearly distinguishable from this case. In *Boswell,* the defendant was detained in an office by the manager of a grocery store as an alleged shoplifter. 1991-NMSC-004, ¶ 2. When a police officer arrived and found evidence of shoplifting, the officer asked for identification. *Id.* The defendant produced the identification from his wallet and was arrested and taken into custody;

however, he inadvertently left his wallet on a file cabinet in the grocery store office. *Id.* After the defendant was booked, the officer returned to the store to retrieve the wallet and discovered a blotter of LSD in the wallet. *Id.* Our Supreme Court concluded that the government interests for the inventory search exception justified the officer's return to recover the wallet and concluded that a reasonable nexus between the arrest and seizure was therefore present. *Id.* ¶ 14. In *Boswell*, (1) the defendant had possession of the wallet on his person at the time of his arrest; and (2) both law enforcement and the defendant mistakenly forgot to take the wallet to the station and it was temporarily left behind at a public grocery store. *Id.* ¶ 2. Whereas, in the present case, the backpack was not on Defendant's person or in his physical possession when he was arrested, but was placed in the carport of his home before law enforcement pulled into the driveway.

{14}     The State also fails to satisfy the requirement that the purported inventory search was made in accordance with police guidelines. While an inventory search is not required to be in writing, it must be standardized. *State v. Wilson*, 1994-NMSC-009, ¶¶ 7, 16, 116 N.M. 793, 867 P.2d 1175; *Shaw*, 1993-NMCA-016, ¶ 9 ("[W]ritten procedures are unnecessary as long as the inventory search is carried out in accordance with established inventory procedures."). We therefore assume, without deciding, that Deputy Vasquez's testimony was sufficient to prove a standardized

8

police inventory procedure. Even with this assumption, Deputy Vasquez did not carry out the seizure in accordance with the guideline. According to the guideline as described, law enforcement at the Sheriff's Department only inventory items on the person of an arrestee at the time of the arrest. However, as we have already noted, Defendant did not have physical possession of the backpack when he was arrested, and Deputy Vasquez acknowledged that the backpack was not on Defendant's person at the time of his arrest. By Deputy Vasquez's own admission, and the undisputed facts, the seizure of the backpack was not in accordance with the Sheriff's Department's guideline.

{15}   Finally, the State failed to establish that the search was reasonable. To be a reasonable search under this exception, it must be made pursuant to an established procedure and further any one of the three purposes: "(1) to protect the arrestee's property while it remains in police custody; (2) to protect the police against claims or disputes over lost or stolen property; or (3) to protect the police from potential danger." *Id.* ¶ 10. We have already concluded that the seizure did not comply with the Sheriff's Department procedure. Furthermore, the backpack was seized only because Defendant said it had marijuana inside in response to Deputy Vasquez's questioning after he arrived and began investigating a potential traffic violation. There is no evidence that Deputy Vasquez expressed any concern with protecting the backpack

or its contents while Defendant was in the custody of the police; with protecting the police against claims or disputes over lost or stolen property; or because of concerns about officer safety. Based upon the record before us, the only reason Deputy Vasquez seized and searched the backpack was because Defendant responded to questioning and said it contained marijuana. We therefore conclude that the seizure and search of the backpack was not a reasonable inventory search. *Cf. Florida v. Wells*, 495 U.S. 1, 4 (1990) ("[A]n inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence.").

{16}     The State failed to establish any of the elements required to justify the search of Defendant's backpack as an inventory search. Defendant does not contest whether Deputy Vasquez had reasonable suspicion to conduct the traffic stop or was required to give *Miranda* warnings prior to asking about the contents of the backpack. *See State v. Funderburg*, 2008-NMSC-026, ¶ 15, 144 N.M. 37, 183 P.3d 922 ("We agree that reasonable suspicion is a commonsense, nontechnical conception, which requires that officers articulate a reason, beyond a mere hunch, for their belief that an individual has committed a criminal act." (alteration, internal quotation marks, and citation omitted)); *State v. Snell*, 2007-NMCA-113, ¶ 10, 142 N.M. 452, 166 P.3d 1106 (stating that *Miranda* warnings are necessary prior to a custodial interrogation). Additionally, and most importantly in the present case, the State and the district court

only identified and relied upon the inventory search exception to justify the warrantless search of Defendant's backpack at his home. As such, we do not address any other exception to the warrant requirement.

## III.    CONCLUSION

{17}    The order of district court is reversed and this case is remanded for further proceedings consistent with this opinion.

{18}    **IT IS SO ORDERED.**


_____
**MICHAEL E. VIGIL, Chief Judge**

**WE CONCUR:**


_____
**JONATHAN B. SUTIN, Judge**


_____
**TIMOTHY L. GARCIA, Judge**

11